**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                      Chapter 11

GO WEST ENTERTAINMENT, INC.,                Case No. 08-11420 (ALG)

                        Debtor.

---------------------------------------------------------------x

GO WEST ENTERTAINMENT, INC.,

                        Plaintiff,

      -against-                            Adv. Proc. No. 08-01182 (ALG)

NEW YORK STATE LIQUOR AUTHORITY,

                        Defendant.

---------------------------------------------------------------x

**MEMORANDUM OF OPINION AND ORDER**
**DENYING DEBTOR'S APPLICATION FOR A PRELIMINARY INJUNCTION**

A P P E A R A N C E S:

PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP
Attorneys for Debtor
  By:   Sherri D. Lydell, Esq.
         Scott K. Levine, Esq.
         Andrew S. Muller, Esq.
         Teresa Sadutto-Carley, Esq.
1065 Avenue of the Americas
New York, New York 10018

ATTORNEY GENERAL OF THE
STATE OF NEW YORK
Attorney for the New York State Liquor Authority
  By:   Elizabeth Prickett-Morgan, Esq.
         Neil S. Mann, Esq.
120 Broadway
New York, New York 10271

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

This is a motion by the debtor ("Debtor"), the operator of a "gentlemen's nightclub" under the name "Scores West," for a preliminary injunction "staying the effectiveness" of the revocation of the Debtor's liquor license by the defendant New York State Liquor Authority ("SLA"). The Debtor seeks a stay pending its appeal in the State courts of the SLA's revocation of the license, a stay that the Appellate Division has twice denied. For the reasons set forth below, the Debtor's motion is denied.

## BACKGROUND

The background to the present dispute may be briefly stated. On the evening of January 24-25, 2007, the Debtor was the subject of a "sting operation" by vice squad officers of the New York City Police Department. The SLA thereafter opened a proceeding to suspend, cancel or revoke the Debtor's liquor license and on February 21, 2007, entered an "Emergency Summary Order of Suspension" of the Debtor's license, which was stayed pending hearings before Administrative Law Judge Robert L. Karr. Hearings were held before ALJ Karr on March 28, July 13, July 17, August 6, August 29, September 25, October 16 and November 14, 2007 concerning the charges, and by written decision dated February 2, 2008, he sustained all charges and found that the Debtor had permitted women to solicit for prostitution on the premises and that the licensee had failed to exercise adequate supervision over the business. On March 5, 2008 the SLA Board sustained the decision and ordered revocation of the Debtor's liquor license, a civil penalty of $20,000 and a claim on the Debtor's bond of $1000. On the

next day the SLA revoked the Debtor's liquor license, effective immediately, and ordered that the license be surrendered forthwith.

On March 7, 2008 the Debtor sought review of the SLA's determination in the State Supreme Court and obtained a temporary stay of the order of revocation. Four days later, in accordance with State practice, the Supreme Court transferred the proceeding to the Appellate Division, and the Debtor thereafter obtained a continuance of the temporary stay from a justice of that Court. That temporary stay then came before a panel of five justices of that Court and on April 15, 2008, the Court vacated the interim relief and denied the stay. The SLA on April 17 again ordered the Debtor's license revoked, effective immediately.

The Debtor's Chapter 11 filing followed on April 18. On April 22 the Debtor filed an adversary proceeding against the SLA, seeking a finding that revocation of the Debtor's liquor license prior to a determination of its appeal by the Appellate Division constituted a violation of the automatic stay of § 362(a) of the Bankruptcy Code, or in the alternative, that an injunction should issue under Bankruptcy Code § 105 staying the action of the SLA pending the appeal. This Court denied the Debtor's motion for a temporary restraining order by oral decision on April 23, 2008, but expedited a hearing on this motion, which was held on May 6. In the meantime, the Debtor sought reconsideration of the Appellate Division's refusal to stay the revocation; by order dated April 29, 2008, reconsideration of the order refusing the stay was denied.

DECISION

*A. Section 362 of the Bankruptcy Code*

The first prong of the Debtor's motion seeks a finding by this Court that the SLA's refusal to suspend the effectiveness of its order revoking the Debtor's liquor license, pending the Debtor's appeal in the State courts, constitutes a violation of the automatic stay of § 362 of the Bankruptcy Code. There is no dispute that a license constitutes property of a debtor's estate, and ordinarily "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" is automatically barred by § 362(a)(3) of the Code. On the other hand, § 362(b)(4) of the Bankruptcy Code explicitly exempts from the purview of the foregoing ban "the commencement or continuation of an action or proceeding by a governmental unit…to enforce such governmental unit's … police or regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's … police or regulatory power." The SLA is a "governmental unit" under the Bankruptcy Code. 11 U.S.C. § 101(27).

There can be no dispute that "Where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." *Midlantic Natl. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 504 (1986), quoting S.Rep. No. 95-989 at 52 (1978); H.R.Rep. No. 95-595 at 343 (1977). Two tests have been used to determine whether governmental action fits within the "police or regulatory power" exception to the

4

automatic stay. Under the "pecuniary purpose test," the automatic stay may apply where the government is acting "solely to advance a pecuniary interest of the governmental unit." *In re Universal Life Church*, 128 F.3d 1294, 1297 (9th Cir. 1997). Under the "public policy" test, the court must distinguish "between proceedings that effectuate public policy, and those that adjudicate private rights." *NLRB v. Continental Hagen Corp.*, 932 F.2d 828, 833 (9th Cir. 1991), quoting *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986). Proceedings that effectuate public policy are excepted from the automatic stay by virtue of § 362(b)(4). Proceedings that only advance governmental fiscal interests or adjudicate private rights are not.

The action of the SLA constitutes governmental action to effectuate public policy under both of these tests. The only issue before the Court is the revocation of the Debtor's license; the SLA has made no effort to collect the minor fine also imposed on the Debtor and has represented that it will make no effort to do so during this case. The reasons for the revocation of the license involve issues that are clearly within the purview of the public health, safety and welfare laws and do not advance private rights. License revocation proceedings have frequently been held to be proceedings within a State's police or regulatory power and thus within the exception of § 362(b)(4). *See In re Mason*, 18 B.R. 817, 820 (Bankr. W.D. Tenn. 1982) (liquor license); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 860 (Bankr. M.D. Fla. 1990); *In re Christmas*, 102 B.R. 447, 460-61 (Bankr. D. Md. 1989); *see also In re Ngan Gung Rest.*, 183 B.R. 689, 691-92 (Bankr. S.D.N.Y. 1995) (enforcement of labor laws against restaurant to recover unpaid wages for debtor's employees).

The Debtor cites one early case, *Industrial Natl. Bank of Rhode Island v. Miceli* (*In re Gencarelli*), 14 B.R. 751 (Bankr. D.R.I. 1981), where a town was seeking to revoke a liquor license that had been pledged to a bank on the ground the tavern had not remained open for business the required number of hours per day. The Court held that these proceedings did not constitute action to enforce "consumer protection, safety or similar police or regulatory laws" and that the governmental unit's actions were not within the purview of § 362(b)(4). This decision was decided under a prior version of the Bankruptcy Code, when § 362(b)(4) did not expressly apply to action under § 362(a)(3) and the statute as then drafted did not expressly cover State action designed to obtain or exercise control over the Debtor's property. Moreover, the goals of the SLA's proceeding have a much more obvious connection to the government's police and regulatory powers than the defaults present in the *Gencarelli* case. It is not persuasive authority with respect to the instant dispute.[1]

*B. Section 105*

Even though the automatic stay does not apply, the Debtor has also moved for a preliminary injunction under § 105(a) of the Bankruptcy Code staying the revocation of its license pending a decision by the Appellate Division. Section 105(a) authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Since the Debtor is seeking a preliminary injunction, it

---

[1] The Debtor also cites an unreported oral decision by Judge Brozman of this Court in a Chapter 11 case commenced in 1998 by another Scores club. *In re Scores Entertainment, Inc.*, Case No. 98-47779 (Bankr. S.D.N.Y.). There New York City was attempting to enforce its zoning laws against a "gentlemen's club," the merits of the issue were hotly contested, and the question was whether the debtor could obtain preliminary relief against license revocation pending an initial determination in the New York courts. The State court justice had specifically inquired whether the automatic stay would apply. Judge Brozman held that action to revoke the license would be within the scope of § 362(b)(3) and not exempted by § 362(b)(4) pending an initial determination as to the applicability of the City's laws in question. Here, by contrast, there has been a determination adverse to the Debtor, and the Debtor had the benefit of a stay during the lengthy period of the State administrative process.

6

must demonstrate (i) irreparable injury if preliminary relief is not granted, and (ii) probability of success on the merits.  There is no dispute on the papers before the Court that the revocation of the Debtor's liquor license constitutes irreparable injury to the Debtor.  The State has not questioned this.[2]  The real question is whether the Debtor can show probability of success on the merits.  Probability of success means that the Debtor is likely to succeed in *this* lawsuit, not that the Debtor is likely to overturn the SLA's determination in the Appellate Division.  In many cases a party seeking a preliminary injunction can substitute for the second showing  "sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the plaintiff's favor." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam).  However, since the Debtor seeks to stay "government action taken in the public interest," it must meet the higher standard of "probability of success on the merits."  *N.Y.C. Environmental Justice Alliance v. Giuliani*, 214 F.3d 65, 68 (2d Cir. 2000); *Plaza Health Labs. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989).

As a preliminary matter, the SLA argues that § 105 "'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law' or 'to act as roving commissions to do equity.'" *Louisiana Pub. Serv. Comm'n. v. Mabey* (*In re Cajun Elec. Power Co-op.*), 185 F.3d 446, 453, n.9 (5th Cir. 1999), quoting *Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1116

---

[2]  There are cases that relieve a debtor from showing irreparable injury in a motion for relief under § 105 if the requested injunction is necessary in order to preserve the jurisdiction of the Bankruptcy Court.  *See, e.g., In re Chateaugay Corp., Reomar, Inc.*, 93 B.R. 26, 29 (S.D.N.Y. 1988); *Johns-Manville Corp. v. Colorado Ins. Guar. Corp.* (*In re Johns-Manville Corp.*), 91 B.R. 225, 227-28 (Bankr. S.D.N.Y. 1988).  There is no such question present in this case and, in any event, the issue is not whether this Debtor can show irreparable injury but whether it can show a probability of success on the merits.

7

(5th Cir. 1995); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). This frequently-invoked maxim does not advance the analysis of the issues. Even the *Cajun Electric* Court recognized that "significant authority exists suggesting that courts may properly invoke § 105(a) to enjoin proceedings that are excepted from the automatic stay under § 362(b)(4)." *Cajun Electric*, 185 F.3d at 457, n. 18.[3] The Second Circuit similarly held, in a case arising under the Bankruptcy Act, that the Bankruptcy Court had authority to enjoin revocation of a debtor's certificate of occupancy for a nursing home, observing that "Congress removed local regulation only from the effect of the *automatic* stay; it did not eliminate the bankruptcy court's power to enjoin the enforcement of local regulation which is shown to be used in bad faith." *Natl. Hospital & Inst. Builders Co. v. Goldstein*

---

[3] *Cajun Electric*'s footnote 18 is instructive. It reads in full:
> We have previously recognized that significant authority exists suggesting that courts may properly invoke § 105(a) to enjoin proceedings that are excepted from the automatic stay under § 362(b)(4). *See* [*Matter of*] *Commonwealth Oil Ref. Co.*, 805 F.2d [1175,] 1188, n. 16 (noting that, although "[c]ourts considering the scope of § 105 have seen it as an avenue available for staying actions that are found to fall within an exception to the automatic stay," a court's powers under § 105 "are not unlimited."); *Browning* [*v. Navarro*]*,* 743 F.2d [1069,]at 1084 [(5th Cir. 1984)] ("A bankruptcy court has the power to enjoin proceedings excepted from a § 362 stay under 11 U.S.C. § 105[ ]...."); *cf. Javens v. City of Hazel Park (In re Javens),* 107 F.3d 359, 366 (6th Cir.1997) ("By creating exceptions for police and regulatory actions, Congress removed local regulation only from the effect of the automatic stay; it did not eliminate the bankruptcy court's power to enjoin the enforcement of local regulation which is shown to be used in bad faith.") (internal quotation marks omitted); *Corporacion de Servicios Medicos Hospitalarios de Fajardo v. Mora (In re Corporacion de Servicios Medicos Hospitalarios de Fajardo),* 805 F.2d 440, 449 n. 14 (1st Cir.1986) ("We reaffirm, however, that a bankruptcy court does possess the power, in *exceptional* circumstances, to enjoin even administrative proceedings that are exempt from the automatic stay pursuant to section 362(b)(4), (5)."). Because we conclude that the bankruptcy court abused its discretion by entering the injunction even if it had proper authority under § 105(a), however, we do not consider the scope of a court's power to enjoin administrative proceedings that are excepted from the automatic stay.

*Cajun Electric*, 185 F.3d at 457, n.18.

(*In re Natl. Hospital & Inst. Builders Co.*), 658 F.2d 39, 43 (2d Cir. 1981).[4] *See also In re Neumann*, 71 B.R. 567, 571-72 (S.D.N.Y. 1987) (nursing home license); *Thomassen v. Div. of Medical Quality Assurance* (*In re Thomassen*), 15 B.R. 907 (B.A.P. 9th Cir. 1981) (medical license).[5]

The Debtor's motion for a stay involves its ability to utilize what is probably its most important asset; as stated above, the SLA has not contested that loss of the license even temporarily would constitute irreparable injury. Issuance of the injunction would effectuate a principal purpose of Chapter 11 of the Bankruptcy Code, which is to promote the rehabilitation of businesses. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 527 (1984) ("policy of Chapter 11 is to permit successful rehabilitation of debtors").

Notwithstanding its authority to issue an injunction under § 105, the Court is convinced that the Debtor has not demonstrated probability of success on the merits in this case. The Debtor asks this Court to intervene in connection with an ongoing appeal in the State courts from the determination of a State administrative agency. The Debtor does not dispute the fact that this Court has no power to review or overturn a final State determination of the issues herein. *See Locurto v. Giuliani*, 447 F.3d 159, 170-71 (2d Cir. 2006) (Federal courts give State administrative proceedings the "same preclusive effect to which it would be entitled in the State's courts," and New York "give[s] quasi-

---

[4] The Bankruptcy Act did not have a provision similar to § 362(b)(4) expressly exempting from the automatic stay State action to enforce the police power. However, the effect of the new Bankruptcy Code was discussed by the Circuit Court in the quote above, and the Court went on to say explicitly that "we do not believe that Congress, under either the Act or the Code, intended to prohibit bankruptcy courts from protecting a debtor's assets from bad faith zoning regulations." *Nat'l Hospital*, 658 F.2d at 43.

[5] In *Board of Governors of Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 39-40 (1991), the Supreme Court held that the Bankruptcy Court had no authority to stay administrative proceedings that "fall squarely within § 362(b)(4)" or to "determine whether the proposed exercise of police or regulatory power is legitimate." However, the Court also stated, in dictum, "If and when the Board's proceedings culminate in a final order, and if and when judicial proceedings are commenced to enforce such an order, then it may well be proper for the Bankruptcy Court to exercise its concurrent jurisdiction under 28 U.S.C. § 1334(b)." *MCorp*, 502 U.S. at 41. The SLA administrative proceedings have culminated in a final order.

9

judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate."), citing *Univ. of Tennessee v. Elliot*, 478 U.S. 788, 799 (1986) and *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 310 (2d Cir. 2005); *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 489 (1984); *see also Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007 (1988) (default judgment in State Court binding in bankruptcy case).[6] Indeed, the Debtor does not ask the Court to reverse the SLA's determination and concedes that only the State appellate courts can do so.

Nevertheless, the Debtor is seeking to have this Court impose a stay using its equitable powers for the duration of a State appeal where the State appellate court has twice denied this same relief. Such an order would directly violate the principle of comity and avoidance of needless friction between Federal and State courts that has been incorporated in several abstention doctrines. The most relevant for present purposes is so-called *Younger* abstention, which instructs that "Federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). "This principle of abstention is grounded in interrelated principles of comity and federalism." *Id.* The same comity principles apply with respect to State administrative proceedings "in which important state interests are vindicated." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986). *Younger* abstention has been deemed

---

[6] *See also Smith v. New York State Liquor Authority* (*In re Bay Ridge Inn, Inc.*), 94 F.2d 555 (2d Cir. 1938), where the Circuit Court reversed the action of the District Court in voiding action by the New York State Liquor Authority that had revoked a liquor license that a bankruptcy trustee had purported to assign to a third party. The Court held that the trustee had to follow State procedures in order to engage in the liquor business and that "To have the license reinstated and to secure the refund he was obliged to avail himself of the means afforded by the act and seek his remedy by an application to the [SLA] and, if unsuccessful, by means of a review in the state court." *Id.* at 557.

applicable in bankruptcy cases. *See In re Franceschi*, 268 B.R. 219 (B.A.P. 9th Cir. 2001), *aff'd*, 43 Fed.Appx. 87, 2002 WL 1763749 (9th Cir. 2002) (on *Younger* abstention grounds only).

The Supreme Court has applied *Younger* abstention in circumstances that are similar to those at bar, where the party seeking the intervention of the Federal courts was complaining of grave harm from the terms on which State law would permit an appeal. In *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987), the Court considered the plight of one of the largest companies in the nation, Texaco, which was the subject of a $11.2 billion jury verdict in the Texas State court. There was no dispute that Texaco could not pay the judgment or obtain a stay of execution on the judgment, under Texas law, by filing an appeal bond. However, Texaco did not assert any of its Constitutional claims in Texas but instead filed an action in Federal District Court in New York and obtained an injunction, affirmed by the Second Circuit, prohibiting enforcement of the provisions of Texas law that required the posting of a bond pending appeal. The New York Federal courts held that Texas had impermissibly burdened Texaco's appellate rights by its procedural rules.

The Supreme Court reversed, ruling that the Federal courts should have abstained under *Younger* and stating, "This Court repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." 481 U.S. at 12-13. The State's interest in *Pennzoil v. Texaco* was in the manner in which private litigants could enforce or obtain a stay of a judgment. The State's interest in the present

11

case is much stronger, as a State agency is one of the litigants and it is seeking to enforce the State's public policy.[7]

Even if *Younger* abstention would otherwise be required, a Federal court may intervene where it is found that the "State proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Hoffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975) (internal quotation omitted). The Second Circuit also observed in the *Nat'l Hospital* case, cited above, that "doctrines of federal abstention in deference to state proceedings have consistently not applied in cases of bad faith conduct by the state." *Nat'l Hospital*, 658 F.2d at 43, n.1. As the Circuit Court stressed there, a common predicate for the issuance of an injunction in the present circumstances is a showing of bad faith on the part of the government agency. Although the Debtor argues that the SLA case is weak and that its determination will surely be overturned by the Appellate Division, it has made no substantive showing of bad faith. It argues that the ALJ was wrong and complains about the conduct of one of the witnesses for the SLA, but it has not made a credible claim of lack of due process.

The Debtor also argues that the State review process is inadequate and deprives it of its equal protection because § 121 of the Alcoholic Beverage Control Law, which provides for review of SLA determinations, also instructs that "no stay shall be granted pending the determination of the matter except on notice to the liquor authority and for a

---

[7] The Court declines the Debtor's invitation to consider the usefulness of the laws that the SLA is purporting to enforce. *See In re Beker Industries Corp.*, 57 B.R. 611, 629 (Bankr. S.D.N.Y. 1986) ("There is not the slightest indication that Congress sought to expand proceedings concerning the exemption [in § 362(b)(4)] into an inquiry as to whether the debtor's actions substantially threaten public safety.")

12

period not exceeding thirty days." It contends that in 1934, when this provision was adopted, an appeal could be heard in 30 days but that the Appellate Division's calendar today makes it impossible for an appeal to be heard in such a short time. It points out that even though the Appellate Division did not give any reason for its determination, the SLA argued that the Court was without power to grant the Debtor the relief it sought as 30 days had already elapsed since revocation.

The Constitutional claims asserted by the Debtor do not appear to be compelling as a matter of Constitutional law. As the Debtor concedes, there is no Constitutional right to appeal. *Griffin v. Illinois*, 351 U.S. 12, 18 (1972). When a right to appeal is afforded, it cannot be granted to some litigants and denied to others without violating the Equal Protection Clause, but there is no real question here of discrimination; the 30-day rule applies equally to all litigants. In *Louisville & Nashville R.R. Co. v. Stewart*, 241 U.S. 261, 263 (1916), the Supreme Court held that a State is not required, by providing an appellate process, also "to provide for a suspension of the judgment" during the appeal. *See also* the concurring opinion of Justice Stevens in *Texaco v. Pennzoil*, 481 U.S. at 32-33. The Debtor cites *Burack v. State Liquor Authority of the State of New York*, 160 F. Supp. 161 (E.D.N.Y. 1958), where the Court granted an injunction against the SLA enjoining it from using evidence in a proceeding to suspend a liquor license that had been obtained unlawfully and in violation of Constitutional rights. It found that the 30-day provision in § 121 of the Alcoholic Beverage Control Law was inadequate for the filing and final determination of the State court proceeding. *Id.* at 165. But there the plaintiff made a much stronger showing of the violation of a Constitutional right, and the

issuance of the Federal injunction would not have had the effect of reversing a State court determination.

In any event, the Debtor can raise its Constitutional claims in the State Courts. The availability of an adequate opportunity for State review of a Federal Constitutional claim may be a condition to abstention. *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 101 (2d Cir. 2004). However, the question is "whether the state's procedural remedy *could* provide the relief sought [not] . . . whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Spargo*, 351 F.3d at 79; *see also Kaufman v. Kaye*, 466 F.3d 83, 87 (2d Cir. 2006). Accordingly, as the Supreme Court held in *Texaco v. Pennzoil*, if the Debtor has any claims of Constitutional deprivation relating to the State review process, it should raise these claims in the first instance in the State courts. 481 U.S. at 14 ("the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'"), quoting *Moore v. Simms*, 442 U.S. 415, 432 (1977).

It must be emphasized that there is no authority that the principle of *Younger* abstention is implicated by the application of the automatic stay where a debtor has filed under Chapter 11 for the express purpose of obtaining a stay and filing an appeal after an adverse determination in State court. It is noteworthy that three Justices stated in their concurring opinions that Texaco could seemingly obtain the relief it was seeking by a Chapter 11 filing, and Texaco did, in fact, file a Chapter 11 case "solely in order to gain the benefit of the automatic stay provisions of the Bankruptcy Code" to stay enforcement of the judgment. *Kirk v. Texaco*, 82 B.R. 678, 679-80 (S.D.N.Y. 1988). However, in the

14

*Texaco* case, a core provision of the Bankruptcy Code—the automatic stay—was at issue, and it gave the debtor the relief it needed. Moreover, there was never a question of the Federal court issuing an injunction that would have the effect of reversing an express order of a State appellate court.

Several final points should be mentioned. First, the Debtor is seeking an injunction that would restore its liquor license so that it can operate profitably while in Chapter 11. It is well accepted that a debtor operating in Chapter 11 is not exempt from local law but that a debtor must, as mandated by 28 U.S.C. § 959(b), "manage and operate the property … according to the valid laws of the [jurisdiction] in which such property is situated." In *Saravia v. 1736th St., N.W. Limited P'ship*, 844 F.2d 823, 826 (D.C.Cir. 1988), the Court said, "If state law unduly impeded the operation of federal bankruptcy policy, the state law would have to yield." But it went on to find that the debtor there was required to operate in accordance with local law, especially where the locality was asserting its interest in public health and safety. *See also Wilner Wood Products Co. v. State of Maine, Dept. of Environmental Protection*, 128 B.R. 1, 4 (D. Me. 1991). This principle militates in favor of application of State law in this case.

Second, State regulation in this case involves alcoholic beverages. The Twenty-First Amendment to the Constitution gives the States particularly broad regulatory powers with respect to the control of alcohol. U.S. CONST. amend. XXI, § 2. The State's action also has nothing to do with the Debtor's financial condition. Compare one of the principal cases relied on by the Debtor, *In re Mason*, 18 B.R. 817 (Bankr. W.D. Tenn. 1982), where the Court issued an injunction under § 105 to restrain the State from revoking the debtor's liquor license but found that the State was pursuing a form of

"pecuniary interest" because the debtor's only default was a delinquency in paying taxes.[8] By contrast, the regulation at issue is much more closely connected with the governmental unit's core "police or regulatory power."

Lastly, the Supreme Court in *Pennzoil v. Texaco* relied only on *Younger* abstention and not on the *Rooker-Feldman* doctrine. However, since the Debtor is seeking to have this Court overturn a determination of the State court, its motion also implicates the *Rooker-Feldman* doctrine, providing that the Federal courts lack jurisdiction over cases brought by those who have lost in State court and seek to have the Federal court review and in effect reverse the result. *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 288 (2005). The doctrine unquestionably applies in bankruptcy cases. *Thompson v. Roland* (*In re Roland*), 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003). Although there is contrary authority in other circuits, the Second Circuit has held that the doctrine may be triggered by interlocutory orders of the State courts, and it can thus be broader than traditional doctrines of claim and issue preclusion. *Campbell v. Greisberger*, 80 F.3d 703, 707 (2d Cir. 1996) ("It cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are barred from reviewing *final* decisions of the state courts, they are free to review interlocutory orders.")

The *Rooker-Feldman* doctrine has in recent years been significantly narrowed, starting with the Supreme Court's *Exxon Mobil* decision. It also appears to be subject to some of the same exceptions as *Younger* abstention. Thus where a party seeks a judgment of general application declaring a State statute or rule to be unconstitutional, the Federal courts would not lack jurisdiction to consider such a claim. *Hachamovitch v. DeBuono*, 159 F.3d 687, 694-95 (2d Cir. 1998). On the other hand, where (as here) a

---

[8] As noted above, the Court acted under § 105 and held that the State action was not automatically stayed.

16

party complains only of the application of the State law in its individual case, and where the claim could be raised in the State proceeding, the Federal court will lack jurisdiction to consider it. *Id.* at 695-96; *Harris v. New York State Dept. of Health*, 202 F.Supp.2d 143, 165 (S.D.N.Y. 2002); *Weisner v. Rosenberger*, 1998 WL 695927 at *3 (S.D.N.Y. Oct. 6, 1998). In any event, application of the *Rooker-Feldman* doctrine would lead to the same result as abstention—denial of the Debtor's motion.

## CONCLUSION

For the reasons set forth above, the Debtor's motion for a preliminary injunction is denied.

IT IS SO ORDERED.

Dated: New York, New York
       May 14, 2008

                                          */s/ Allan L. Gropper*
                                          ALLAN L. GROPPER
                                          UNITED STATES BANKRUPTCY JUDGE